**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
COLUMBUS DIVISION**

| | |
|---|---|
| KRYSTEN GARNER, on behalf of minor R.C. and the ESTATE OF ANDREW CAMPBELL, | Civil Action No. |
| Plaintiffs, | **Jury Trial Demanded** |
| v. | **COMPLAINT** |
| ANTONIA JAMERSON; WARREN BALTES; JUSTIN MOCK; LOWELL CLARK; DOUGLAS PERNELL; REAGAN BLACK; SCOTT CRICKMAR; and TIMOTHY WARD, | |
| Defendants. | |

Plaintiff Krysten Garner, on behalf of minor R.C. and the Estate of Andrew Campbell,

bring this action against defendants Antonia Jamerson, Warren Baltes, Justin Mock, Lowell

Clark, Douglas Pernell, Reagan Black, Scott Crickmar, and Timothy Ward ("Defendants") and

allege as follows:

**BACKGROUND**

I.     **The Georgia Department of Corrections' Policies and Customs Resulting in Inadequate Suicide Prevention**

1.      It is well-documented that the Georgia Department of Corrections ("GDC") has

allowed an unacceptable and epidemic level of suicide in its facilities.  *See, e.g.*, Virginia

Prescott & Pria Mahadevan, *High Rate Of Prison Suicides in Georgia Draws Concerns*, GA.

PUB. BROADCASTING (Sept. 24, 2019), https://www.gpbnews.org/post/high-rate-prison-suicides-

georgia-draws-concerns.

2.      Since the beginning of 2017, there have been at least 125 inmate suicides in GDC

facilities.

1

3.      The suicide rate in GDC facilities is approximately double the national average and one of the highest among prison systems in the nation.  *See, e.g.*, Max Blau, *Georgia Prisons Face Troubling Rise in Suicides. What Are Officials Doing About It*, MACON TELEGRAPH (Aug. 11, 2019), https://www.macon.com/news/local/article232833697.html.

4.      Severe understaffing in GDC facilities has contributed to GDC's widespread failure to prevent suicides.

5.      As of June 2020, GDC had 2,740 vacant correctional officer positions, approximately 30% of all GDC correctional officer positions.

6.      GDC officers have reported that as few as six security personnel may be required to supervise a prison housing more than 1,500 inmates.

7.      The number of correctional officers employed by GDC declined to 4,060 in 2020 from 4,668 in 2019.

8.      The annual turnover rate of GDC correctional officers has increased steadily from 34.86% in 2018, to 42.08% in 2019, to 43.91% in 2020.

9.      In early 2020, GDC halted all correctional officer hiring events.

10.     Additionally, GDC inmate suicides have been widely attributed to the use of solitary confinement, a well-known cause of mental health issues.

11.     Inmates in multi-roommate special housing, segregation, and especially single-inmate solitary confinement must be regularly and frequently observed for safety 24 hours per day.

12.     Due to understaffing, poor training, and lack of supervision and discipline, GDC correctional officers engage in a routine, widespread custom of failing to conduct regular safety observations of the inmates entrusted to their protection.

13. It is widely known that GDC correctional officers routinely falsify door charts and observation logs intended to document inmate safety observations.

14. GDC through its agents, including Defendants, provides correctional officers at best cursory training and in many cases no training at all regarding suicide prevention and intervention.

15. GDC through its agents, including Defendants, does not require correctional officers to complete emergency first aid training.

16. GDC through its agents, including Defendants, did not require that correctional officers at Rutledge State Prison have immediate access in the housing units to supplies necessary to appropriately respond to inmate suicide attempts, such as sheers or cutdown tools, and automated defibrillators.

## II.   Andrew Campbell's Preventable Suicide

17. In April 2020, Andrew Campbell was an inmate in GDC's Rutledge State Prison.

18. Andrew, a United States Marine, became disabled during deployment in Afghanistan and suffered from mental health issues upon his return to the United States.

19. GDC personnel, including Defendants, knew that Andrew was at a high risk of suicide.

20. GDC personnel placed Andrew in a single-inmate solitary confinement cell in Rutledge State Prison's G-Building.

21. G-Building is an Administrative Segregation/Isolation special housing unit that has 30 beds.

22. The G-Building has two security surveillance cameras.

3

23.     On April 2, 2020, G-Building was staffed only by defendants GDC Correctional Officer Antonia Jamerson and GDC trainee Cadet Warren Baltes.

24.     Officers-in-Charge with responsibility for the operation of the G-Building, including its staffing and the supervision of defendants Jamerson and Baltes, included defendants Lieutenant Justin Mock and Lieutenant Lowell Clark.

25.     Due to understaffing, there was no actual Captain on duty on the night of April 2, 2020.

26.     Defendant Pernell—a GDC lieutenant—was the Acting Captain on the night of April 2, 2020, responsible for the operation of the prison, including its staffing and the supervision of defendants Jamerson, Baltes, Mock, and Clark.

27.     Defendants Jamerson and Baltes failed to conduct required and necessary safety observations of inmates in the G-Building, including Andrew.

28.     At approximately 8:38 p.m., defendant Jamerson discovered Andrew dead, hanging via a bed sheet tied to the bars of his cell door window.

29.     An inmate tying a sheet through the bars of his cell door would be easily discovered during even cursory supervision of the housing unit without even looking into the cell, as is required during inmate safety observations.

30.     In a statement to the Atlanta Journal Constitution, defendant Jamerson admitted that he knew the suicide protocol for Andrew required that he be observed for safety every 15 minutes but explained "you can't do that with one officer" in the unit.

31.     After reviewing the video from the unit and the GDC's own investigation, Defendant Rutledge State Prison Warden Reagan Black stated: "Dorm cameras display rounds

4

had been made outside required time and wrong staff.  Adverse action recommended on Officer Jamerson and Cadet Baltes."

32.     Following Andrew's suicide, defendant Jamerson falsified the observations logs in an attempt to cover up his failure to conduct the required safety rounds at the time that Andrew hung himself.

33.     Defendant Jamerson was later terminated from GDC for "failure to perform assigned duties, falsification of documents, and untimely reporting/documentation."

34.     No one else was disciplined in connection with Andrew's death.

35.     Andrew was survived only by his daughter, R.C., now three years old.

## PARTIES

36.     Plaintiff Krysten Garner is the mother of Andrew's surviving minor daughter, identified by her initials, R.C., pursuant to FED R. CIV. P. 5.2.  Plaintiff is a resident of the State of Georgia.

37.     Defendant Antonia Jamerson is a resident of the State of Georgia.  At all relevant times, defendant Jamerson was a Correctional Officer at Rutledge State Prison.  At all relevant times, defendant Jamerson acted under color of state law and was charged with providing for Andrew's basic needs, which includes access to medical and mental healthcare, and suicide prevention and intervention.  Defendant Jamerson is being sued for damages in his individual capacity.

38.     Defendant Warren Baltes is a resident of the State of Georgia.  At all relevant times, defendant Baltes was a cadet at Rutledge State Prison.  At all relevant times, defendant Baltes acted under color of state law and was charged with providing for Andrew's basic needs,

which includes access to medical and mental healthcare, and suicide prevention and intervention. Defendant Baltes is being sued for damages in his individual capacity.

39.    Defendant Justin Mock is a resident of the State of Georgia.  Defendant Mock was a lieutenant at Rutledge State Prison and officer-in-charge of the G-Building special housing unit at all relevant times.  Defendant Mock acted under color of state law and was responsible for the operations of the G-Building, including its staffing and staff supervision.  Defendant Mock is being sued for damages in his individual capacity.

40.    Defendant Lowell Clark is a resident of the State of Georgia.  Defendant Clark was a lieutenant at Rutledge State Prison and officer in charge of the G-Building special housing unit at all relevant times. Defendant Clark acted under color of state law and was responsible for the operations of the G-Building, including its staffing and staff supervision.  Defendant Clark is being sued for damages in his individual capacity.

41.    Defendant Douglas Pernell is a resident of the State of Georgia.  Defendant Pernell was the Acting Captain at Rutledge State Prison at all relevant times.  As Acting Captain, Defendant Pernell was responsible for the operations of the prison and the supervision of the prison staff.  Defendant Pernell is being sued for damages in his individual capacity.

42.    Defendant Reagan Black is a resident of the State of Georgia.  Defendant Black was the Warden of Rutledge State Prison at all relevant times.  As the Warden, Defendant Black acted under color of state law and was responsible for the operations of the prison and the supervision of the prison staff.  Defendant Black is being sued for damages in his individual capacity.

43.    Defendant Scott Crickmar is a resident of the State of Georgia.  Defendant Crickmar was the Regional Director for the GDC's Southwest Region at all relevant times.

6

Defendant Crickmar acted under color of law and was responsible for the operations of GDC prisons in the GDC's Southwest Region, which includes Rutledge State prison.  Defendant Crickmar is being sued for damages in his individual capacity.

44.     Defendant Timothy Ward is resident of the State of Georgia.  Defendant Ward was the Commissioner of the Georgia Department of Corrections at all relevant times. Defendant Ward acted under color of state law and was responsible for the operations of all GDC prisons, including Rutledge State Prison.  Defendant Ward is being sued for damages in his individual capacity.

## JURISDICTION AND VENUE

45.     The Court has jurisdiction over the subject matter of this action because this action asserts claims arising under the Constitution, laws, or treaties of the United States.

46.     The Court has personal jurisdiction over each Defendant because they are domiciled in the State of Georgia and/or acted and caused injury within the State of Georgia.

47.     Venue is proper in the Middle District of Georgia pursuant to 28 U.S.C. § 1331 and Local Rule 3.4, because a substantial part of the events giving give rise to the claim occurred in Columbus, Georgia, which is situated within the district and divisional boundaries of the Columbus Division of the Middle District of Georgia.

## CLAIMS FOR RELIEF

**Count I:      Violation of Eighth and Fourteenth Amendments by Defendants Jamerson and Baltes Pursuant to 42 U.S.C. § 1983**

48.     Plaintiff incorporates paragraphs 1 through 47 as if fully stated here.

49.     Defendants Jamerson and Baltes were responsible for the safety, security, and well-being of inmates in the G-Building on April 2, 2020.

7

50.     Defendants Jamerson and Baltes knew that Andrew suffered from severe mental health conditions and was a high suicide risk, which constituted serious medical needs.

51.     Defendants Jamerson and Baltes knew that Andrew was on a suicide safety protocol that required he be observed every 15 minutes.

52.     Defendants Jamerson and Baltes nonetheless knowingly failed to conduct safety observations of Andrew on April 2, 2020.

53.     Defendants Jamerson and Baltes failed to discover Andrew's suicide attempt in which he tied a bed sheet through the bars of his cell door, which would have been easily visible within the housing unit.

54.     Defendants Jamerson and Baltes failed to intervene in Andrew's suicide attempt, only discovering him long after he was already dead.

55.     Accordingly, Defendants Jamerson and Baltes were deliberately indifferent to Andrew's safety and well-being and subjected him to the wanton infliction of pain, which constituted cruel and unusual punishment.

56.     As a direct and proximate result of Defendants Jamerson and Baltes' violations of Andrew's constitutional rights, Andrew experienced conscious pain and suffering and died.

**Count II:     Violation of Eighth and Fourteenth Amendments by Defendants Mock, Clark, and Pernell Pursuant to 42 U.S.C. § 1983**

57.     Plaintiff incorporates paragraphs 1 through 47 as if fully stated here.

58.     Defendants Mock, Clark, and Pernell (the "Count II Defendants") were supervising officers with responsibility for the staffing and operation of the G-Building on April 2, 2020.

59.     The Count II Defendants knew that the G-Building housed inmates in abusive and dangerous solitary confinement conditions.

8

60.     The Count II Defendants knew that G-Building housed inmates on suicide protocols who required regular, frequent safety observations 24 hours per day.

61.     The Count II Defendants knew that on April 2, 2020, G-Building was not adequately staffed to provide for the safety and well-being of the inmates housed in the unit yet made no effort to remedy the deficiency.

62.     Accordingly, the Count II Defendants personally violated Andrew's constitutional rights because they were deliberately indifferent to the known risk of danger to inmates in G-Building due to the inability to provide inmate supervision on April 2, 2020.

63.     Additionally, the Count II Defendants have supervisory liability under 42 U.S.C. § 1983 for Andrew's constitutional deprivations because, among other reasons:

a.     They promulgated, enforced, and permitted to exist customs and policies that allowed corrections officers to fail to perform required inmate safety observations without correction or consequence;

b.     They had actual knowledge of a history of widespread abuse, including overuse of solitary confinement and lack of inmate safety observations, that put them on notice of the need to correct the constitutional deprivations and they failed to do so; and

c.     They had actual knowledge that Defendants Jamerson and Baltes would violate Andrew's constitutional rights on April 2, 2020 and failed to stop them from doing so.

64.     As a direct and proximate cause of the Count II Defendants' violations of Andrew's constitutional rights, Andrew experienced conscious pain and suffering and died.

**Count III:     Violation of Eighth and Fourteenth Amendments by Defendants Black, Crickmar, and Ward Pursuant to 42 U.S.C. § 1983**

65.     Plaintiff incorporates paragraphs 1 through 47 as if fully stated here.

66.    Defendants Black, Crickmar, and Ward (the "Count III Defendants") were responsible for all operations of Rutledge State Prison, including policies, procedures, customs, staffing, and employee supervision.

67.    The Count III Defendants had actual knowledge that, among other things:

a.    Rutledge State Prison was grossly understaffed, including on April 2, 2020;

b.    Correctional officers at Rutledge State Prison lacked necessary and appropriate training in inmate supervision, suicide prevention and intervention, and emergency first aid;

c.    Correctional officers at Rutledge State Prison lacked necessary and appropriate supervision;

d.    Correctional officers at Rutledge State Prison routinely failed to conduct required rounds and safety observations; and

e.    Rutledge State Prison personnel overused and abused solitary confinement.

68.    Accordingly, the Count III Defendants have supervisory liability for Andrew's Constitutional Deprivations because, among other reasons:

a.    They promulgated, enforced, and permitted to exist customs and policies that caused corrections officers at Rutledge State Prison to fail to perform required inmate safety observations without correction or consequence;

b.    They promulgated, enforced, and permitted to exist customs and policies that caused Rutledge State Prison to be grossly understaffed such that inmates' well-being could not be reasonably assured;

10

c.      They had actual knowledge of a history of widespread abuse, including understaffing, overuse of solitary confinement, and lack of inmate safety observations, that put them on notice of the need to correct the constitutional deprivations and they failed to do so; and

d.      They had actual knowledge that their subordinates would violate inmates' constitutional rights, including Andrew's constitutional rights on April 2, 2020, and failed to stop them from doing so.

69.      As a direct and proximate cause of the Count III Defendants' violations of Andrew's constitutional rights, Andrew experienced conscious pain and suffering and died.

## PUNITIVE DAMAGES AND ATTORNEYS' FEES

70.      Defendants have acted in bad faith, have been stubbornly litigious, and/or have caused Plaintiff unnecessary trouble and expense.  Accordingly, Plaintiff is entitled to punitive attorney's fees and expenses of litigation pursuant to O.C.G.A. § 13-6-11.

71.      Plaintiff is additionally entitled to attorneys' fees pursuant to 42 U.S.C. § 1988.

72.      Defendants' conduct showed willful misconduct, malice, wantonness, oppression, or that entire want of care which would raise the presumption of conscious indifference to consequences.  Accordingly, Plaintiff is entitled to punitive damages pursuant to O.C.G.A. § 51-12-5.1.

## RELIEF REQUESTED

WHEREFORE, Plaintiff prays that this Court award the following relief from Defendants:

a.      An award of compensatory damages in an amount to be proven at trial;

b.      Interest as allowed by law;

11

c.       An award of punitive damages in favor of Plaintiff against Defendants;

d.       Costs and attorneys' fees pursuant to 42 U.S.C. § 1988;

e.       Costs and attorneys' fees pursuant to O.C.G.A. § 13-6-11; and

f.       Such other and further relief as the Court may deem just and proper.

Dated:  June 9, 2022.

/s/Eric S. Fredrickson
Eric S. Fredrickson
Georgia Bar No. 489783
Matthew S. Harman
Georgia Bar No. 327169

HARMAN LAW FIRM LLC
3575 Piedmont Road, NE
Bldg 15, Suite 1040
Atlanta, GA  30305
Telephone:  (404) 554-0777
Facsimile:  (404) 424-9370
Email:  mharman@harmanlaw.com
       efredrickson@harmanlaw.com

*Attorneys for Plaintiff*

12